USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9-26-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X
Cornelia Fifth Avenue, LLC and GVK Limited :
Partners, :
                              Plaintiffs, :    **1:12-cv-07660**
          -against- :    <u>**OPINION & ORDER**</u>
   :
Michael Canizales, Harris Mylonas, Allen Hunt, :
Christopher Condy, and Paul O'Beirne, X
                              Defendants.
------------------------------------------

**ANDREW L. CARTER, JR., District Judge:**

### I. Introduction

Plaintiffs' case arises out of the negotiation and execution of an asset purchase agreement (the "APA") that closed in early February 2009 between Plaintiff Cornelia Fifth Avenue, LLC ("Cornelia") and non-party, Spa Chakra Fifth Avenue, LLC ("Spa Chakra Fifth"), a wholly-owned subsidiary of Spa Chakra, Inc. ("Spa Chakra"). The APA concerned the assets of a luxury spa operated by Cornelia, located on Fifth Avenue in New York City. By the time of negotiation of the APA, Plaintiff Cornelia was suffering from severe financial difficulties and had defaulted on almost all of its debts — including its debt to its largest secured creditor, Plaintiff GVK Limited Partners ("GVK"). GVK had secured its loan by taking a security interest in all of Cornelia's assets, giving GVK the power to block any sale of Cornelia. In light of Cornelia's default, GVK had begun contemplating foreclosing on its security interest in Cornelia's assets. Thus, GVK's approval was a necessary prerequisite for Cornelia to enter into any agreement.

In order to induce GVK to forebear from foreclosing on Cornelia's assets so that Spa Chakra could purchase the assets, two Spa Chakra Board Members, Defendants Michael Canizales and Christopher Condy, issued a guaranty, promising that Spa Chakra Fifth and Spa Chakra would make scheduled interest and principle payments to GVK until Cornelia's loan was repaid. Shortly

after the APA was executed, Spa Chakra Fifth and Spa Chakra failed to make the promised payments. Plaintiffs filed suit.

According to Plaintiffs, throughout the period of negotiations and closing, Defendants, each directors of Spa Chakra, made or approved the making of fraudulent misrepresentations to Plaintiffs Cornelia and GVK. Both Plaintiffs detrimentally relied upon these alleged misrepresentations — GVK by agreeing to forbear on foreclosure and Cornelia by signing over the assets of its Manhattan spa. Plaintiffs assert that both were damaged as a result. Together, Plaintiffs seek redress for Defendants' allegedly fraudulent misrepresentations, asserting claims for New York common law fraud, fraudulent concealment, constructive fraud, aiding and abetting fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing.

Defendants now move for summary judgment on each of Plaintiffs' claims and Plaintiffs cross-move for summary judgment as to minimum damages. For the reasons discussed below, both motions for summary judgment are denied.

**II.     Factual Background**

The following facts are taken from the parties' Local Civil Rule 56.1 Statements and Counter-Statements, deposition testimony, affidavits, and exhibits. Unless otherwise indicated, the following facts are not in dispute.

Cornelia principals Richard Aidekman and Ellen Sackoff had guaranteed a debt to GVK totaling nearly $1.3 million. By 2008, the loan was in default. The managing partner of GVK, George Kolber, recommended Harriet Terbell as a business broker to assist in resolving Cornelia's financial difficulties. Terbell Dep. at 8:18–25; Terbell Retainer Agreement at ¶ 2. Terbell eventually marketed Cornelia as a "going concern" to interested parties, including Spa Chakra and others. Terbell Dep. at 13:3-7.

In late 2008, Terbell met with representatives of Spa Chakra, Defendants Canizales and Condy, to talk about Spa Chakra's interest in Cornelia. Kolber, Aidekman, and Sackoff were also present. Terbell Dep. at 28:21–30:8. Plaintiffs assert that sometime between December 2008 and January 2009, during a phone call with Aidekman, Canizales and Condy made "a variety of statements" asserting that Spa Chakra was "a highly successful spa business; that they had 22 locations, both domestic and foreign; that they had a strong financial position; that they were in the extended growth phase." Aidekman Dep. at 30:24–31:5.

As discussions continued, Cornelia and Spa Chakra reached an agreement in principle that Spa Chakra would purchase the assets of Cornelia in order to continue the spa as a going concern.[1] Aidekman also insisted that Cornelia's liabilities would need to be paid, including the approximately $1.3 million of debt to GVK, as the "purchase price" for the transaction. The parties, therefore, planned for Spa Chakra to pay Cornelia's entire debt to GVK at closing. Hein Decl. at Ex. 38 (Email from Harriet Terbell to Richard Aidekman, George Kolber, and Jeffrey Aidekman (Jan. 2, 2009)); Ex. 39 (Jan. 8, 2009 Term Sheet); Ex. 40 (Jan. 23, 2009 Term Sheet); Ex. 41 (Jan. 25, 2009 Term Sheet); Ex. 42 (Jan. 27, 2009 Term Sheet). Plaintiffs assert that during this time, Condy reassured Aidekman that Spa Chakra had the financial wherewithal to assume Cornelia's obligations to GVK and others. Aidekman Dep. at 39:5–9.

Meanwhile, Cornelia had fallen behind on rent payments and Cornelia's landlord, Sator Realty, Inc. ("Sator Realty"), had instituted eviction proceedings. See Notice of Termination. Sator Realty was informed of the proposed deal with Spa Chakra and in turn agreed to delay taking the subsequent steps necessary to evict Cornelia until February of 2009, in order to facilitate Spa Chakra

---

[1] During the same time, Kolber met with American Leisure about partnering to purchase Cornelia. Kolber Dec. 1/29/16 at ¶ 6. On December 30, 2008, American Leisure provided projections in support of this deal. Id. at Exhibit A. However, Kolber ended his negotiations with American Leisure after Michael Canizales reminded him of the exclusivity provision between Spa Chakra and Cornelia. Kolber Dep. at 56:19–57:4.

Fifth's planned assumption of tenancy as part of the proposed APA. Hein Decl. at Ex. 26 (Stand Still Agreement); Ex. 27 (Email from Michael Canizales to Harriet Terbell, Christopher Condy, et al. (Jan. 13, 2009)): Ex. 28 (Email from George Kolber to Vincent Ottomanelli, President of Sator Realty (Jan. 16, 2009)); Ex. 29 (Email from Todd Lamb to Eric Kahan (Jan. 16, 2009)); Ex. 30 (Email from Todd Lamb to Eric Kahan (Jan. 21, 2009)); Ex. 31 (Lease between Sator Realty and Spa Chakra Fifth (Feb. 12, 2009)).

The proposed agreement between Cornelia and Spa Chakra faced additional external pressure because Cornelia's default entitled GVK to immediately exercise its right to foreclose on the very same assets that formed the basis of the proposed APA. However, by the end of January of 2009, approximately one week before the APA was signed, Spa Chakra backed away from its proposal to pay Cornelia's debt to GVK in a lump sum at closing. The parties dispute the cause and timing of Spa Chakra's change of heart, but agree that Spa Chakra offered to pay all of Cornelia's debts, including the debt to GVK, over the course of three years, in accordance with other agreed upon milestones. Hein Decl. at Ex. 43 (Jan. 29, 2009 Term Sheet); Gurtman Aff. at Ex. PP (Jan. 29, 2009 Term Sheet).

In order to induce GVK not to exercise its right to foreclosure, Canizales and Condy agreed that the Spa Chakra entities would issue a guaranty (the "Guaranty"), promising to make interest and principle payments to GVK until Cornelia's debt was repaid. This was later memorialized in the Guaranty, which provided,

> In exchange for [GVK's] forbearance, as to the immediate exercise of certain rights under the Loans [to Cornelia] and certain security instruments executed in connection therewith, [Spa Chakra Fifth and Spa Chakra, Inc.] agree that the [Asset Purchase Agreement] will include provisions requiring the repayment of all Loans owed to [GVK] by [Aidekman and Sackoff] . . . and whereas, as further consideration for [GVK's] forbearance, [Spa Chakra Fifth and Spa Chakra, Inc.] have agreed to guarantee all payments due to [GVK] from [Aidekman and Sackoff] as set forth in the Payment Schedule . . . and incorporated by reference herein."

4

Guaranty at 1. The Guaranty explicitly acknowledged that "forebearance by [GVK] would not be granted but for the making of this Guaranty." Id.

During the course of negotiations, Cornelia and GVK allegedly reviewed publicly available information and communicated with Defendants Canizales and Condy in order to glean more information about Spa Chakra. Kolber Dep. at 23:19–24. The parties dispute whether and when Plaintiffs requested and/or received financial information prepared in accordance with Generally Accepted Accounting Principles ("GAAP") from Spa Chakra. Defendants' Rule 56.1 Statement at ¶ 244; Kolber Dep. at 136:10-17. They also disagree as to whether Spa Chakra's Board Members were routinely updated about the status of the negotiations, including Cornelia's financial dire straits as a result of defaulting on its various obligations, and as a result, whether they were on notice that the financial ability of Spa Chakra to assume Cornelia's obligations was of central importance to Aidekman. See Aidekman Dep. 39:5–9.

Curiously, Defendants' own submissions raise questions about whether the Board Members in question — Defendants Mylonas, Hunt, and O'Beirne — in preparation for voting to enter into the Guaranty and the APA, received, reviewed, and ratified the financial information allegedly provided to Plaintiffs. For example, Condy's own deposition indicates that Mylonas, Hunt, and O'Beirne received a board package containing financial statements for Spa Chakra, in preparation for the discussion regarding the proposed acquisition of Cornelia. Condy Dep. at 26:22–27:6; 27:25–28:5; 28:25–29:4. Minutes from the meeting at which the Board voted to ratify the APA indicate that Mylonas, Hunt, and O'Beirne were presented with a term sheet documenting the transactions concerning the asset purchase and the guaranty obligations that Spa Chakra, Inc. would be assuming with respect to GVK and others. Hein Decl. at Ex. 19 (Jan. 31, 2009 Meeting Minutes) at C24; Gurtman Aff. at Ex. RR (Secretary's Certificate).

Additionally, meeting minutes from various Board of Directors meetings indicate that the board meetings that Mylonas, Hunt, and O'Beirne regularly attended featured detailed presentations regarding Spa Chakra's financials. Hein Decl. at Ex. 21 (Feb. 20, 2008 Meeting Minutes) at 1223, Ex. 15 (Mar. 19, 2008 Meeting Minutes) at C289, Ex. 16 (Apr. 16, 2008 Meeting Minutes) at C295, Ex. 17 (May 28, 2008 Meeting Minutes) at C301, Ex. 18 (Aug. 20, 2008 Meeting Minutes) at C313–C317, Ex. 12 (Sept. 17, 2008 Meeting Minutes) at C320–C321, Ex. 22 (Oct. 16, 2008 Meeting Minutes) at 1216–1217, Ex. 23 (Nov. 19, 2008 Meeting Minutes) at 1218–1220; Ex. 24 (Dec. 17, 2008 Meeting Minutes) at 1203–1207. These factual disputes inform the parties' dueling factual submissions as to whether Defendants Mylonas, Hunt, and O'Beirne were aware that Spa Chakra allegedly disseminated financial information to Plaintiffs.

The parties agree, however, that on February 5, 2009 Cornelia, Spa Chakra Fifth, and Spa Chakra entered into the APA. The APA required Spa Chakra Fifth to make monthly payments to cover certain sales tax liabilities to New York State, as well as scheduled monthly payments to GVK to repay the interest and principle on Cornelia's debt to GVK. Spa Chakra guaranteed these payments. APA at 9–10, Schedule 2.3.

A few months later, Spa Chakra Fifth defaulted on its obligations under the APA; Spa Chakra also failed to make any interest payments due on Cornelia's debt to GVK. In December of 2009, less than one year after entering into the Guaranty with GVK and the APA with Cornelia, Spa Chakra Fifth was forced into bankruptcy. Later in the month, Spa Chakra and its other subsidiaries filed a voluntary petition, consolidating the various proceedings.

According to Plaintiffs, during the course of the bankruptcy proceedings, Spa Chakra disclosed information that had not been made available to Cornelia and GVK during the negotiation process, the due diligence period, or in the balance sheet received by Aidekman and Kolber.

Plaintiffs assert that this newly acquired information, if timely disclosed, would have painted a very different picture of the financial ability of Spa Chakra to assume Cornelia's obligations. In particular, Plaintiffs point to discrepancies between the balance sheet and an audited financial statement by Kasperski, Owen & Dinan, Spa Chakra's Certified Public Accountants from December of 2008 – the same time period negotiations between Plaintiffs and Spa Chakra began. Hein Decl. at Ex. 48 (Spa Chakra, Inc. and Subsidiaries: Consolidated Financial Report (Dec. 31, 2008)).

The financial statement shows that Spa Chakra's financial wherewithal was actually several millions of dollars less than it had represented to Kolber and Aidekman. The same financial statement indicated that Spa Chakra "was not in compliance with its covenants and payment obligations to its primary lender, Hercules Technology II, L.P.," had "incurred significant operating losses and [had] a substantial negative working capital position as of December 31, 2008," and as a result, "[could] be unable to continue as a going concern." Hein Decl. at Ex. 48 (Spa Chakra, Inc. and Subsidiaries: Consolidated Financial Report (Dec. 31, 2008), 21).

Plaintiffs charge that all defendants, by virtue of routine Board Meetings, had intimate knowledge of Spa Chakra's true financial condition. Therefore, Defendants knew or should have known that the financial documents provided to Plaintiffs contained misrepresentations or omissions concerning the financial health of Spa Chakra. Plaintiffs' Rule 56.1 Counter-Statement at ¶¶ 26, 27, 34, 194, 237, 238, 252.

Plaintiffs further assert that Spa Chakra purposely withheld this material and relevant information from them in order to induce Plaintiffs to sign over Cornelia's assets because without the immediate financial contribution of Cornelia's Manhattan spa, Spa Chakra would have been in such a dire financial position that it would have been unable to forestall foreclosure, bankruptcy,

liquidation, or similar action for long enough to allow Spa Chakra to seek viable investors to keep the company afloat. Amd. Compl. at ¶¶ 115–119; see Gurtman Aff. at Ex. K (Valuation Research Corporation, Spa Chakra, Inc. 363 Asset Valuation Analysis (Feb. 18, 2010) (demonstrating that without Cornelia's Manhattan spa, Spa Chakra's Earnings Before Interest, Taxes, Depreciation and Amortization would have been negative). Defendants sharply dispute each of these assertions, averring that the financial troubles of the Spa Chakra entities started *after* acquiring Cornelia and originated from Cornelia's gross understatement of its own financial obligations. Defendants' Rule 56.1 Statement at ¶¶ 319–324.

These diverging narratives beget the parties' positions on whether and the extent to which Cornelia and GVK were damaged as a result of the Spa Chakra entities' failure to meet their obligations under the Guaranty and the APA. For example, Plaintiffs allege that GVK was, at minimum, damaged in the amount of $428,208.63 by Spa Chakra, Inc.'s failure to repay the full loan that was secured by the Cornelia Day Resort. Plaintiffs also assert that Cornelia suffered minimum damages of $4,386,393.38, representing the purchase price for Cornelia Day Spa on the day the asset purchase agreement was closed. See Plaintiffs' Rule 56.1 Statement at ¶¶ 4–5. Defendants counter that Plaintiffs have failed to submit any evidence of debt that Spa Chakra Fifth or Spa Chakra failed to pay to GVK, averring that the debt was discharged by GVK's former attorney in a malpractice action arising out of malpractice that came to light during the bankruptcy proceedings against Spa Chakra. Defendants' Rule 56.1 Statement.

These disputes notwithstanding, Defendants move for summary judgment on each of Plaintiffs' claims. Plaintiffs cross-move for summary judgment as to minimum damages.

### III.   Standard of Review

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, the

8

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, in order to defeat a properly supported motion for summary judgment, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (emphasis in original)). See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985).

Although the Court must accept as true the allegations of the nonmoving party, drawing all reasonable inferences in its favor, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted); Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 151 (2d Cir. 2007) ("conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment"); BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77

F.3d 603, 615 (2d Cir. 1996) (it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts.").

Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)).

Finally, in considering the parties' arguments, the Court, in exercising its diversity jurisdiction, must "apply the substantive law of the state to which the forum state, New York, would have turned had the suit been filed in state court." Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278, 280 (2d Cir. 1981) (citations omitted). Both sides agree that New York law applies to the instant case.

### IV.  Evidentiary Matters

In the present case, Plaintiffs' responses to Defendants' Rule 56.1 Statement raise one question regarding the admissibility of evidence and genuineness of dispute. Defendants assert that minutes from meetings of Spa Chakra's Board of Directors ("Board Minutes") upon which Plaintiffs rely in their opposition are irrelevant, inauthentic, and/or inadmissible hearsay. The Court disagrees.

The Board Minutes are relevant. Plaintiffs cite to the Board Minutes in support of their assertions that the financial circumstances of the parties at the time of contracting had a direct impact on the provisions of the Guaranty and the Asset Purchase Agreement. Without more elucidation from Defendants in support of their argument that the Board Minutes are not relevant,

the Court cannot rule at this juncture that the Board Minutes are, as Defendants contend, *per se* irrelevant.

Second, the Board Minutes are admissible. Plaintiffs offer the minutes to demonstrate that there is a genuine issue of material fact as to whether the individual Defendants knew or should have had reason to know that the information that was later allegedly provided to Plaintiffs concerning Spa Chakra's financial wherewithal was misleading or fraudulent. Defendants' blanket objections that the minutes are of questionable authenticity and alleged hearsay are misplaced. Defendants' objections to their authenticity is itself a disputed issue of fact against which inferences are drawn in favor of the nonmovant for purposes of this motion. Furthermore, on their face, the disputed documents are admissible at trial as business records.

Separately, the Court notes that Defendants Defendants' attorney attached the minutes from one board meeting to his affidavit and swore to it as a true and certified copy pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. This decision on the part of Defendants is too ambiguous to place before the Court any appropriately defined issue as to waiver as to the admissibility of the remaining Board Minutes that can and should be resolved *in limine*. The Court should not be tasked with parsing Defendants' intent in that vein. In the absence of more specific briefing, the Court risks making a determination that Defendants are not in fact seeking or on a basis not raised. Thus, for the time being, the Court will treat all of the Board Minutes in the record as admissible for the purpose of considering the parties' cross-motions for summary judgment. See Charles A. Wright, Arthur R. Miller & Mary K. Kane, 10A Federal Practice and Procedure §§ 2722, 2724 (1983). Where a summary judgment motion is supported by affidavits, those "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

11

matters stated therein." Fed. R. Civ. P. 56(e). "'[H]earsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.'" Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) (quoting 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed.1985)); see, e.g., Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999); Contemporary Mission, Inc. v. United States Postal Service, 648 F.2d 97, 105 n. 11 (2d Cir. 1981).

**V.     Discussion**

Disputed issues of material fact preclude summary judgment for either Defendants or Plaintiffs. At the most general level, Cornelia and GVK allege that Defendants Canizales and Condy convinced Cornelia and GVK that Spa Chakra had the financial wherewithal to assume Cornelia's debts. Plaintiffs further assert that Defendants were motivated to induce GVK to forbear on foreclosing on Cornelia's assets and induce Cornelia to enter into the APA because Spa Chakra was in financial turmoil; acquiring Cornelia would provide Spa Chakra with an influx of profits that would allow it to forestall foreclosure, bankruptcy, or liquidation until additional investment could be found to save the company.

As to the remaining Defendants, however, there is no claim that Mylonas, Hunt, or O'Beirne ever provided documents to Plaintiffs. Therefore, as to these defendants, Plaintiffs assert that but for their decision to ratify the Guaranty, the APA, and the fraudulent misrepresentations and omissions included therein, Spa Chakra would not have made fraudulent misrepresentations or omissions to Cornelia and GVK. Without these misrepresentations, Plaintiffs GVK and Cornelia would not have been induced to enter into the Guaranty and APA, respectively, and would never have been damaged.

Defendants assert that even if the Court accepts as true the facts underlying these allegations, there is not enough evidence in the record for Plaintiffs to prove any of their causes of action or prevail on their motion for minimum damages.

### A. Claims Arising Out of Fraud

Defendants assert that no genuine issue of material fact precludes summary judgment in their favor because, even if the Court accepts Plaintiffs' allegations as true, there is not sufficient record evidence for Plaintiffs to prove the elements of fraud. Accordingly, Plaintiffs' causes of action for fraud, fraudulent concealment, constructive fraud, and aiding and abetting fraud must fail.

#### i. Fraud

In order to prove fraud under New York law, Plaintiffs must demonstrate by clear and convincing evidence: (1) a false representation or omission of material fact; (2) knowledge by the party who made the representation that it was false when made; (3) intent to defraud; (4) justifiable reliance by Plaintiffs; and (5) resulting injury. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006); Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citing Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)).

Here, there are triable issues of material fact regarding whether Defendants Canizales and Condy made false representations or omissions of material fact. For example, Plaintiffs claim that Defendants Canizales and Condy made several false statements misrepresenting the financial strength of Spa Chakra. Canizales and Condy also provided Plaintiffs' respective principals with financial documents bolstering their previous misrepresentations, including a balance sheet that offered a picture of Spa Chakra's financial health that is irreconcilable with the audited financial statement and valuation report disclosure during the bankruptcy proceedings.

Defendants concede that while Defendant Condy told Kolber that Spa Chakra was a growing organization with locations around the world, his was not an actionable statement of fact, but mere opinion and puffery. Defendants deny that any of the remaining Defendants made any statements concerning the financial wherewithal of Spa Chakra, and further deny providing Aidekman or Kolber with financial statements that would have reflected the financial strength of Spa Chakra.

There are also triable issues of material fact regarding whether Defendants Mylonas, Hunt, and O'Beirne made false representations or omissions of material fact. Plaintiffs allege that Mylonas, Hunt, and O'Beirne were presented with and discussed the representations that Spa Chakra had made to Cornelia and GVK, including Canizales and Condy's verbal representations and the fraudulent financial documentation concerning Spa Chakra's financial status. Plaintiffs also assert that Defendants Mylonas, Hunt, and O'Beirne approved the informational packets containing the Guaranty and the APA, which allegedly included fraudulent financial documentation. Defendants' ratification of these packets ensured that both draft agreements containing the fraudulent information were presented to Plaintiffs for execution.

Both sides also offer conflicting evidence that raises significant factual disputes as to whether all Defendants knew or should have known that the representations made to Plaintiffs were false. For example, Defendants charge that Plaintiffs have failed to put forth evidence that Defendants Mylonas, Hunt, and O'Beirne had actual knowledge that Plaintiffs had received fraudulent information because Mylonas, Hunt, and O'Beirne never reviewed the balance sheet. The Court disagrees. Defendants' assertion that Defendants Mylonas, Hunt, and O'Beirne never reviewed balance sheets or documents related to the cash flow of Spa Chakra, Inc. is inconsistent with testimony from Defendant Condy that all Defendants routinely received such information

prior to each board meeting. Condy Dep. at 26:22–27:6; 27:25–28:5; 28:25–29:4. Additionally, the Board Minutes indicate that each regular meeting of the Board included a Powerpoint presentation containing Spa Chakra's financial documents and information. Hein Decl. at Ex. 21 (Feb. 20, 2008 Meeting Minutes) at 1223, Ex. 15 (Mar. 19, 2008 Meeting Minutes) at C289, Ex. 16 (Apr. 16, 2008 Meeting Minutes) at C295, Ex. 17 (May 28, 2008 Meeting Minutes) at C301, Ex. 18 (Aug. 20, 2008 Meeting Minutes) at C313–C317, Ex. 12 (Sept. 17, 2008 Meeting Minutes) at C320–C321, Ex. 22 (Oct. 16, 2008 Meeting Minutes) at 1216–1217, Ex. 23 (Nov. 19, 2008 Meeting Minutes) at 1218–1220; Ex. 24 (Dec. 17, 2008 Meeting Minutes) at 1203–1207. This alone calls into question whether Defendants had actual knowledge of a potential fraud and provides a sufficiently triable issue of fact to preclude a grant of summary judgment for either Defendants or Plaintiffs.

There is also conflicting evidence in the record concerning whether Defendants exhibited and intent to defraud, with Defendants asserting a failure of proof and Plaintiffs offering a possible motive to rescue a financially-strapped Spa Chakra. See Amd. Compl. at ¶¶ 115–119; Gurtman Aff. at Ex. K (Valuation Research Corporation, Spa Chakra, Inc. 363 Asset Valuation Analysis (Feb. 18, 2010) (demonstrating that without Cornelia's Manhattan spa, Spa Chakra's Earnings Before Interest, Taxes, Depreciation and Amortization would have been negative); Defendants' Rule 56.1 Statement at ¶¶ 319–324.

Taken together, these issues of material fact preclude the entry of summary judgment with respect to Plaintiffs' fraud claims against Defendants at this time. These same issues also preclude the entry of summary judgment with respect to Plaintiffs' motion for minimum damages.

### ii. Fraudulent Concealment

The elements of a cause of action for fraudulent concealment are: (1) a relationship between the parties creating a duty to disclose; (2) knowledge of the material facts by the party

bound to make such disclosures; (3) failure to discharge the duty to disclose; (4) scienter; (5) reliance; and (6) damages. Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 582 (2d Cir. 2005). A duty to disclose exists "where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." Miele v. Am. Tobacco Co., 2 A.D.3d 799, 803, 770 N.Y.S.2d 386 (2d Dep't 2003); see also Abrams v. Gen. Motors Corp., 120 Misc.2d 371, 374 (N.Y. Sup. Ct. 1983) ("If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud.").

The triable issues of material fact precluding summary judgment on Plaintiffs' fraud claim enumerated above preclude the entry of summary judgment as to fraudulent concealment as well. Summary judgment is also precluded by triable issues of fact as to whether some or all defendants had superior knowledge of the financial wherewithal of Spa Chakra as compared with Plaintiffs. The Court believes that some of the evidence in the record, namely the financial information that came to light during the bankruptcy, calls into question whether or not Defendants concealed information in their dealings with Plaintiffs that was not available to the public. Viewing the evidence in a light most favorable to both parties when considering the cross-motions, there exists a triable issue of fact as to the nature of the relationship between Plaintiffs and Defendants. Therefore, summary judgment relating to Plaintiffs' claim for fraudulent inducement would be inappropriate and is hereby denied for both parties.

### iii. Constructive Fraud

In order to establish a constructive fraud, the plaintiff must prove that: (1) a representation was made; (2) the representation dealt with a material fact; (3) the representation was false; (4) the representation was made with the intent to make the other party rely upon it; (5) the plaintiff relied

upon the representation; (6) the plaintiff was damaged; and (7) the parties were in a fiduciary or confidential relationship. Del Vecchio by Del Vecchio v. Nassau County, 499 N.Y.S.2d 765, 768 (1986); Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk, 848 F.Supp. 446, 455 (S.D.N.Y. 1994) (quoting Brown v. Lockwood, 432 N.Y.S.2d 186, 193 (2d Dep't 1980)).

Even in an arms-length business relationship, a plaintiff can establish a claim for constructive fraud where the defendant "misled the plaintiff by false representations concerning the subject of his superior knowledge or expertise." Brown, 432 N.Y.S.2d at 195. Indeed, the concept of constructive fraud turns on the defendant's exploitation of its relationship with the plaintiff; the defendant's duty lies in the fact that possesses a position of superiority and influence over the plaintiff." Id. at 194. In order for a plaintiff to demonstrate that a fiduciary or confidential relationship exists, "there must be evidence of other facts or circumstances showing inequality or controlling influence. The existence of such a relationships will ordinarily be a question of fact." Matter of Nealon, 104 A.D.3d 1088, 1089 (3d Dep't 2013).

Defendants maintain that summary judgment should be granted on Plaintiffs' claim for constructive fraud because Plaintiffs offer nothing but a bare conclusion that there was a fiduciary relationship between Defendants and Plaintiffs. Plaintiffs assert that there is no genuine issue of material fact that such a relationship existed between Plaintiffs and Defendants. For the reasons enumerated in the discussions of fraud and fraudulent concealment, above, the Court believes that there are significant factual disputes as to all the elements of constructive fraud, which preclude the entry of summary judgment for Defendants or Plaintiffs. The parties' cross-motions for summary judgment on Plaintiffs' constructive fraud claim are denied.

### iv.  Aiding and Abetting Fraud

For Defendants to be liable for aiding and abetting fraud, Plaintiffs must show by clear and convincing evidence: (1) the existence of a fraud; (2) Defendants' actual knowledge of the fraud; and (3) that Defendants provided "substantial assistance to advance the fraud's commission." See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp., 816 F.Supp.2d 222, 237 (S.D.N.Y. 2011) (quoting Lerner, 459 F.3d at 295), aff'd, 503 Fed. Appx. 51 (2d Cir. 2012). "Whether the assistance is substantial or not is measured, in turn, by whether the action of the aider and abettor proximately caused the harm on which the primary liability is predicated." Winnick, 406 F.Supp.2d at 256 (quoting In re WorldCom, Inc. Sec. Litig., 382 F.Supp.2d 549, 560–61 (S.D.N.Y. 2005)).

Defendants seek summary judgment on Plaintiffs' aiding and abetting fraud claims, arguing that Plaintiffs have not put forth any evidence supporting any of the requisite elements. Defendants are mistaken. For the reasons set forth above, in the discussions of fraud, fraudulent concealment, and constructive fraud, the Court finds that a reasonable jury could find that Plaintiffs have met the first two elements of aiding and abetting fraud.

As to the requirement of substantial assistance, Defendants maintain that Plaintiffs have failed to advance evidence that by voting to enter into the Asset Purchase Agreement, Defendants Mylonas, Hunt, and O'Beirne provided substantial assistance to Defendants Canizales and Condy, chiefly because there is no evidence in the record that but for the ratifying vote, Plaintiffs would not have received the fraudulent financial information.

The Court disagrees. A reasonable jury could find that without the vote, Spa Chakra would have never remitted the Guaranty or the APA to Plaintiffs for their approval. This adequately

establishes a sufficiently triable issue of fact to preclude a grant of summary judgment for either Defendants or Plaintiffs. The parties' cross-motions as to Plaintiffs' claim of aiding and abetting fraud are denied.

### B. Negligent Misrepresentation

Under New York law, a claim of negligent misrepresentation requires that: (1) Defendants had a duty, as a result of a special relationship, to give correct information; (2) Defendants made a false representation that they should have known was incorrect; (3) the information supplied in the representation was known by Defendants to be desired by Plaintiffs for a serious purpose; (4) Plaintiffs intended to rely and act upon it; and (5) Plaintiffs reasonably relied on it to their detriment. Hydro Investors, Inc. v. Trafalgar Power, Inc., 227 F.3d 8, 19 (2nd Cir. 2000) (citing King v. Crossland Savs. Bank, 111 F.3d 251, 257–58 (2nd Cir. 1997)).

Summary judgment is precluded on Plaintiffs' claim of negligent misrepresentation for the same reasons articulated above in the Court's analysis of Plaintiffs' claims for fraud, fraudulent concealment, constructive fraud, and aiding and abetting fraud. Accordingly, Defendants and Plaintiffs cross-motions are denied as to this claim.

### C. Breach of the Covenant of Good Faith and Fair Dealing

Under New York law, every contract contains an implicit covenant of good faith and fair dealing. See 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (N.Y. 2002); Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002); Durham Indus., Inc. v. North River Ins. Co., 673 F.2d 37, 41 (2d Cir. 1982). The implied duty is a fiduciary one meant to prevent either party from "destroying or injuring the right of the other party to receive the fruits of the contract." The Kirke La Shelle Co. v. The Paul Armstrong Co., 263 N.Y. 79, 87 (1933); PCVST Mezzco 4, LLC v. Wachovia Bank Comm. Mortg. Trust 2007–C30, 2015 WL 153048, at *5 (S.D.N.Y. Jan. 12, 2015) (the duty "is breached when a party to a contract acts in a

manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement.").

Viewed in the light most favorable to Plaintiffs, the record raises genuine factual issues as to whether Defendants dealt with Plaintiffs in good faith. For example, the financial documents revealed during Spa Chakra's bankruptcy suggest that Defendants misrepresented or omitted relevant information about the financial wherewithal of Spa Chakra that would have had a direct bearing on its ability to assume Cornelia's debts – an important provision of both the Guaranty and the APA. This supports Plaintiffs' allegation that Defendants obscured this damaging information in order to acquire Cornelia and use the profits to stave off bankruptcy or other financial ruin.

These genuine issues of material fact preclude the entry of summary judgment for either Defendants or Plaintiff. Accordingly, the parties' cross-motions are denied.

## VI. Conclusion

For the foregoing reasons, Defendant and Plaintiffs cross-motions for summary judgment are denied.

**SO ORDERED.**

Dated: September 26, 2016
New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge