USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-16-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Cornelia Fifth Avenue, LLC and GVK Limited Partners,

                              Plaintiffs,

-against-

Michael Canizales, Harris Mylonas, Allen Hunt, Christopher Condy, and Paul O'Beirne,

                              Defendants.

1:12-CV-07660
**OPINION & ORDER**

---

ANDREW L. CARTER, JR., District Judge:

## I. INTRODUCTION

Plaintiffs Cornelia Fifth Avenue, LLC and GVK Limited Partners (collectively "Plaintiffs") bring suit against Spa Chakra, Inc. ("Spa Chakra") and its Board Members Michael Conizales, Harris Mylonas, Allen Hunt, Christopher Condy, and Paul O'Beirne (collectively "Defendants"). The suit arises out of the negotiation and execution of the February 2009 Asset Purchase Agreement (the "APA") between Plaintiff Cornelia Fifth Avenue, LLC ("Cornelia") and a non-party Spa Chakra Fifth Avenue, LLC ("Spa Chakra Fifth"), a wholly-owned subsidiary of Spa Chakra. The APA concerned the assets of a luxury spa operated by Cornelia, located on Fifth Avenue in New York City. By the time of negotiation of the APA, Plaintiff Cornelia was suffering from severe financial difficulties and had defaulted on almost all of its debts — including its debt to its largest secured creditor, Plaintiff GVK Limited Partners ("GVK"). GVK had secured its loan by taking a security interest in all of Cornelia's assets, giving GVK the power to block any sale of Cornelia. In light of Cornelia's default, GVK had begun contemplating foreclosing on its security interest in Cornelia's assets. Thus, GVK's approval was a necessary prerequisite for Cornelia to enter into any agreement.

In order to induce GVK to forebear from foreclosing on Cornelia's assets so that Spa Chakra could purchase the assets, two Spa Chakra Board Members, Defendants Michael Canizales and Christopher Condy, issued a guaranty, promising that Spa Chakra Fifth and Spa Chakra would make scheduled interest and principle payments to GVK until Cornelia's loan was repaid. Shortly after the APA was executed, Spa Chakra Fifth and Spa Chakra failed to make the promised payments. Plaintiffs filed suit.

According to Plaintiffs, throughout the period of negotiations and closing, Defendants, each directors of Spa Chakra, made or approved the making of fraudulent misrepresentations to Plaintiffs Cornelia and GVK. Both Plaintiffs detrimentally relied upon these alleged misrepresentations — GVK by agreeing to forbear on foreclosure and Cornelia by signing over the assets of its Manhattan spa. Plaintiffs assert that both were damaged as a result. Together, Plaintiffs seek redress for Defendants' allegedly fraudulent misrepresentations, asserting claims for New York common law fraud, fraudulent concealment, constructive fraud, aiding and abetting fraud, negligent misrepresentation, and breach of the covenant of good faith and fair dealing.

Defendants moved for summary judgment on each of Plaintiffs' claims and Plaintiffs cross-moved for summary judgment as to minimum damages. The Court denied both parties' motions. Cornelia Fifth Ave., LLC v. Canizales, 2016 WL 5390894, at *1 (S.D.N.Y. Sept. 26, 2016) (the "Opinion"). Defendants now move for reconsideration on the issue of damages pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3. For the reasons set forth below, Defendants' motion for reconsideration is **DENIED**.

II. DISCUSSION

Defendants ask the Court to reconsider their arguments contained within Defendants' summary judgment briefing and dismiss each and every cause of action against each of the

Defendants. According to Defendants, the Opinion contained an error of law that necessitates reconsideration because the Court failed to specifically address the controlling case law regarding the economic loss doctrine. Defendants contend that the Court should have granted summary judgment in favor of Defendants because the economic damages sought by Plaintiffs are inappropriate contract damages, rather than appropriate tort damages. Defendants' argument is without merit.

### a. Legal Standard

As an initial matter, Local Rule 6.3 provides that "a notice of motion for reconsideration . . . shall be served . . . in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment." Defendants' motion for reconsideration was timely filed. Under Federal Rule of Civil Procedure 59(e), reconsideration of a previous order by the court lies squarely within the court's sound discretion. See Devlin v. Transp. Comm'ns Int'l Union, 175 F.3d 121, 132 (2d Cir.1999).

Reconsideration of a prior order under Federal Rule of Civil Procedure 59(e) "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Ferring B.V. v. Allergan, Inc., 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting Sikhs for Justice v. Nath, 893 F.Supp.2d 598, 605 (S.D.N.Y. 2012)). For that reason, the standard of review applicable to such a motion is "strict." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

The burden is on the movant to demonstrate that the Court overlooked controlling decisions that were before it on the original motion, and that might "'materially have influenced its earlier decision.'" Anglo Am. Ins. Group v. CalFed, Inc., 940 F.Supp. 554, 557 (S.D.N.Y.1996) (quoting Morser v. AT & T Info. Sys., 715 F.Supp. 516, 517 (S.D.N.Y. 1989)); see also Analytical Surveys,

Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) ("[T]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."); Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)); Schoolcraft v. City of New York, 298 F.R.D. 134, 136 (S.D.N.Y. 2014); Parrish v. Sollecito, 253 F.Supp.2d 713, 715 (S.D.N.Y. 2003).

A party seeking reconsideration may neither repeat "arguments already briefed, considered and decided," nor "advance new facts, issues or arguments not previously presented to the Court." Schonberger v. Serchuk, 742 F.Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted).

### b. The Court Did Not Commit Clear Errors in Law

First, Defendants' arguments concerning economic loss doctrine do not raise any issues overlooked by the Opinion. Defendants reassert points that were addressed in the Opinion, which, in motions for reconsideration is grounds for denying the motion. Analytical Surveys, 684 F.3d at 52. On this basis alone, Defendants' motion is denied.

In any event, Defendants' motion fails for another reason: Defendants have failed to demonstrate that the Court overlooked any controlling decisions on economic loss doctrine when the Court determined that there existed genuine issues of material fact that precluded summary judgment as to both parties' motions.

#### i. The Economic Loss Doctrine

The New York common law economic loss doctrine is a rule that prohibits a plaintiff from recovering economic losses in tort actions. See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 711 N.Y.S.2d 391, 393 (App. Div. 1st Dep't 2000) ("Finlandia I"), rev'd, 96 N.Y.2d 280, 289 (2001) ("Finlandia II"). Under the doctrine, the defendant is not liable to the plaintiff for economic loss unless plaintiff demonstrates that there exists "a special relationship

that requires the defendant to protect against the risk of harm to plaintiff." Finlandia II, 96 N.Y.2d at 289.

This rule exists for a few reasons. First, to the extent that a plaintiff seeking economic damages is looking to recover the loss of expectation damages arising out of the existence of a contract, the rule ensures that the dispute remains an action for breach of contract. "[C]ourts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." Hydro Investors, 227 F.3d 8, 16 (2d Cir. 2000); see also Finlandia I, 711 N.Y.S.2d at 393–94 (noting that the effect of the economic loss doctrine is that a plaintiff "suffering purely financial losses is restricted to an action in contract for the benefit of its bargain"); Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc., 206 A.D.2d 177, 179 (1994) ("The economic loss rule reflects the principle that damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort.").

Second, the rule reflects a policy interest in protecting defendants from disproportionate and potentially limitless liability. "[R]elying solely on foreseeability to define the extent of liability in cases involving economic loss, while generally effective, could result in some instances in liability so great that, as a matter of policy, courts would be reluctant to impose it." Hydro Investors, 227 F.3d at 16 (citation omitted). Thus, in order to avoid "crushing exposure" to suits by countless parties who have suffered economic loss, New York courts have concluded that "[a]bsent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." Finlandia II, 96 N.Y.2d at 289.

However, a limited exception exists for claims of negligent misrepresentation, as long as there is a showing that there was either actual privity of contract between the parties or a close

relationship that approximates privity. Parrott v. Coopers & Lybrand, L.L.P., 95 N.Y.2d 479, 483 (2000) (citation omitted); see also Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417, 424 (1989). This type of relationship is also referred to as the "functional equivalent of privity." Parrott, 95 N.Y.2d at 482.

Under New York law, a claim of negligent misrepresentation requires that: (1) Defendants had a duty, as a result of a special relationship, to give correct information; (2) Defendants made a false representation that they should have known was incorrect; (3) the information supplied in the representation was known by Defendants to be desired by Plaintiffs for a serious purpose; (4) Plaintiffs intended to rely and act upon it; and (5) Plaintiffs reasonably relied on it to their detriment. Hydro Investors, 227 F.3d at 19 (citing King v. Crossland Savs. Bank, 111 F.3d 251, 257–58 (2nd Cir. 1997)). Said differently, a defendant is liable "where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage," provided that "such information" was "expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all." AUSA Life Ins. Co. v. Ernst & Young, 206 F.3d 202, 208 (2d Cir. 2000).

In order to demonstrate the existence of the "functional equivalent of privity" sufficient to establish a claim for negligent misrepresentation, Plaintiffs must satisfy a three-prong test. Parrott, 95 N.Y.2d at 482. First, Plaintiffs must show "an awareness by the maker of the statement [i.e., Defendants] that it is to be used for a particular purpose." Id. at 484 (citation omitted). Second, Plaintiffs must demonstrate "reliance . . . on the statement in furtherance of that purpose." Id. (citation omitted); see also Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 79 (2d Cir. 2000) (describing this prong as "requir[ing] fulfillment of two distinct factors," that Plaintiffs

6

are "one of a specific, identifiable class of persons" and that Defendants "knew [Plaintiffs] would rely" on their statement). Third, Plaintiffs must adduce "some conduct by [Defendants] linking [the statement] to the relying party and evincing its understanding of that reliance." Parrott, 95 N.Y.2d at 484 (citation omitted). Together, these three prongs require Plaintiffs to demonstrate "a clearly defined set of circumstances which bespeak a close relationship premised on knowing reliance." Id.; see also MS P'ship v. Wal–Mart Stores, Inc., 294 A.D.2d 853, 854 (App. Div. 4th Dep't 2002) ("For defendant to be liable, reliance by plaintiff upon the representation must be 'the end and aim of the transaction', rather than an 'indirect or collateral' consequence of it.") (citation omitted).

The record indicates that Plaintiffs' claim for negligent misrepresentation is not a contractual dispute disguised as a tort, but is rather a claim sounding in tort. Although the parties may have entered into a contract governing some aspects of their relationship, the damages sought by Plaintiffs for negligent misrepresentation are for a harm that is distinct from the contract — a harm arising out of Defendants' failure to provide accurate information to Cornelia and GVK, which thereby induced GVK to forebear on foreclosure and induced Cornelia to sign over the assets of its Manhattan spa.

The Court previously denied the parties' cross-motions for summary judgment, in part, because a genuine issue of material fact as to whether the various elements of negligent misrepresentation were present in the instant case and therefore precluded summary judgment. In particular, summary judgment was precluded by triable issues of material fact as to whether Defendants had a duty, as a result of a special relationship, to give correct information to Plaintiffs. Opinion at 15–16. There was inconsistent evidence in the record concerning whether some or all defendants had superior knowledge of the financial wherewithal of Spa Chakra as compared with

7

Plaintiffs. In particular, some of the evidence in the record, namely the financial information that came to light during the bankruptcy, calls into question whether or not Defendants concealed information in their dealings with Plaintiffs that was not available to the public.

Furthermore, the Opinion acknowledged that there are triable issues of material fact in this case regarding whether Defendants Canizales and Condy made false representations or omissions to Plaintiffs. Opinion at 13. There are also triable issues of material fact regarding whether Defendants Mylonas, Hunt, and O'Beirne made false representations or omissions to Plaintiffs. Opinion at 14. Thus, viewing the evidence in a light most favorable to both parties when considering the cross-motions, there were triable issues of material fact as to the nature of the relationship between Plaintiffs and Defendants that goes directly to the issue of the privity — an element Plaintiffs must prove in order to bring a claim for negligent misrepresentation that is exempted from the economic loss doctrine and not duplicative of any contract damages Plaintiffs might have. Accordingly, Defendants' contentions raised in the instant motion do not permit a grant of reconsideration.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration is **DENIED**. The Clerk of Court is directed to close ECF no. 146.

**SO ORDERED.**

Dated: March 16, 2017
    New York, New York

**HON. ANDREW L. CARTER, JR.**
**United States District Judge**